NEHEMIAH HAZEN *et Ux.* Appellees,

*against*

PETER SMITH and JOSIAH CASWELL, Appellants.

DEBT on recognisance entered by private in-
former in pursuance of an order of a Justice holding
a Court of Inquiry.

Attach *Peter Smith* and *Josiah Caswell* to answer
unto *Nehemiah Hazen* and *Miriam* his wife, in a plea
of debt, that they render to the said *Nehemiah* and
*Miriam* 1,000 dollars, which they justly owe and un-
justly detain, for this, to wit : that whereas the said
*Peter Smith,* on the 11th day of *September,* in the
year of our Lord 1797, at *Middletown,* in the County
of *Rutland,* prayed out a warrant against the said *Mi-
riam* and one *Jacob Harrington,* on the complaint of
the said *Peter*—[*Here follows a charge of adultery
against Miriam and Jacob Harrington.*] Said *Har-
rington,* who was at that time the husband of another
woman, and the said *Miriam* not being the wife of
the said *Harrington,* but the lawful wedded wife of
another man, against the form, force and effect of the
statute in such case made and provided, &c. which
said warrant, so made out by the said *Peter* as afore-
said, upon the complaint aforesaid, was signed by and
made returnable before *Edmund Bigelow,* Esquire,
one of the Justices of the Peace within and for the
County of *Rutland,* having sufficient power and au-
thority to issue the same ; upon which said warrant
the said *Miriam* and the said *Jacob* were duly arrested
and brought before said *Edmund Bigelow,* Justice of

14

*Debt on recog-
nisance entered
by private in-
former upon
motion and or-
der for new bail
before a jus-
tice holding
court of inqui-
ry, will not lie
under the sta-
tute of 1787.*

Hazen et ux.
v.
Smith and Caswell.

the Peace as aforesaid, on the same 11th day of *September*, 1797, to answer unto the complaint of the said *Peter*, so exhibited as aforesaid against them the said *Miriam* and *Jacob*, and the said *Miriam* and *Jacob* then and there objected against the bail of the said *Peter*, which he had heretofore entered before said Justice for the prosecution of the complaint as aforesaid, as being insufficient to secure the costs which might enure to them in case the said *Peter* failed to prosecute his said complaint to effect. Whereupon it was then and there ordered and adjudged by said Justice, that the said *Peter Smith* should procure and enter further bail to secure the costs to the said *Miriam* and *Jacob* in that behalf; and the said *Peter Smith* and *Josiah Caswell* then and there personally appeared before said Justice, and acknowledged themselves jointly and severally indebted and recognised to the said *Miriam* and *Jacob* in the sum of 1,000 dollars in due form of law, conditioned that the said *Peter* should prosecute his said complaint so made to the said Justice as aforesaid, against the said *Miriam* and *Jacob*, and to pay all costs and damages in case he did not support and prosecute the same to effect, as by the records of the said Justice, ready in Court to be shewn, may fully appear. Whereupon the said Justice proceeded to hear said cause upon the complaint of the said *Peter* so exhibited against them the said *Miriam* and *Jacob* as aforesaid, and upon hearing the same, ordered and adjudged that the said *Miriam* should be bound in a bond of recognisance with sureties in the sum of 333 dols. 33 cts. conditioned for the appearance of the said *Miriam* before the Supreme Court of

Judicature then next to be holden at *Rutland*, within and for the County of *Rutland*, on the *Tuesday* next following the fourth *Tuesday* of *January* then next, then and there to answer unto the complaint of the said *Peter* so exhibited as aforesaid, and abide the order of the said Supreme Court thereon, as by the records and proceedings of said Justice may more fully appear; with which order of the said Justice the said *Miriam* then and there complied; and the said *Miriam* did accordingly appear at and before the Supreme Court of Judicature holden at *Rutland*, &c. on the *Tuesday* next following the fourth *Tuesday* of *January*, 1798, according to the tenor of said bond of recognisance; and did then and there, before said Supreme Court, answer to the complaint of the said *Peter* as aforesaid, and also to an indictment for the causes and matters in the said *Peter's* complaint contained, preferred to said Court by the Grand Jurors of said County, before said Court then and there duly impanelled, sworn and charged, and was then and there, by the verdict of the Petit Jury, on trial of the charges in said indictment, found not guilty of the matters and things whereof she stood complained and indicted as aforesaid; and the said Supreme Court did thereupon order and adjudge, that the said *Miriam* should be discharged from her said bonds of recognisance, and go without day for ever exonerated and acquitted from all and all manner of crimes and delinquencies alleged against her in said complaint and indictment. Wherefore the said *Peter* did not prosecute his said complaint to effect, and the said *Nehemiah* and *Miriam* say that they have been put to great costs and expense in defending against

the complaint of the said *Peter*, so commenced and prosecuted by the said *Peter* against the said *Miriam* as aforesaid; and that the said *Peter* or the said *Josiah*, or either of them, have not paid to the said *Nehemiah* and *Miriam*, or either of them, their just costs and damages by them sustained in that behalf. Whereby and by reason of the premises, the said *Nehemiah* and *Miriam* say, that the said recognisance so entered into by the said *Peter* and *Josiah* as aforesaid, conditioned to support and prosecute said complaint to effect in manner and form as aforesaid, is become forfeited and due to the said *Nehemiah* and *Miriam*, and an action hath accrued to them the said *Nehemiah* and *Miriam*, to demand and have of the said *Peter* and *Josiah* the said sum of 1,000 dollars, contained in said bond of recognisance; yet the said *Peter* and *Josiah*, or either of them, have not paid, &c. but detain it, *ad damnum*, 100 dollars.

To this declaration the defendants demurred specially. Plaintiffs joined. Defendants took the following exceptions to the declaration:

First. That the declaration does not set forth that *Miriam* was the wife of *Nehemiah Hazen* at the period of the commencement of the present action, or that her present husband *Nehemiah* was any ways liable to any damages she may have sustained.

Secondly. That the recognisance set forth in the declaration was taken at the Court of Inquiry, and not at the commencement of the process; that the Justice had no authority at such time to take such recognisance.

Thirdly. That the recognisance was taken *jointly* to her and *Jacob Harrington*, who is not joined in the present action.

Fourthly. That it appears, from the face of the declaration, that the defendant *Peter Smith* did in fact prosecute his complaint to effect.

*John Cook*, for defendants, in support of the demurrer. The principle of law is, that the declaration is to be taken strongly against him who makes it.

This declaration does not set forth that the plaintiff *Miriam* was the wife of the plaintiff *Nehemiah*, but in the language of the declaration she may be the wife of some other person. This exception is not trivial. The declaration is at least uncertain. If there is any right of action in the plaintiff *Nehemiah*, it must accrue from his intermarriage with *Miriam*, the obligee in the recognisance declared upon; and this being the foundation of his right of action, ought not to be taken by intendment, but should have been substantially set forth. In all cases where the *baron* prosecutes in right of the *feme*, the demand is first set forth as existing in the woman *dum sola;* and then the intermarriage is formally set forth, and the right to join in the action declared to have accrued to him by the coverture.

Under the second exception, we observe, that all the authority given by law to Justices of the Peace to take recognisances in criminal prosecutions *at the time of taking this recognisance*, which was before the late law passed, is given by the statute passed *March* 3d, 1787, entitled, an act concerning sureties and *scire facias*, since repealed. All the power given by

*Hasw.* ed. *Vermont* Stat. p. 170.

Hazen et ux.
v.
Smith and Cas-
well.
this statute to the Justice, is contained in the follow-
ing clause : " that no special warrant to apprehend
any person shall be granted by any magistrate before
the person praying out such warrant has given suffi-
cient surety or sureties by way of recognisance to the
person complained of, that such person requesting
the warrant will prosecute his complaint to effect,
and answer all damages if he does not support it."
Here all the authority given to the Justice is to take
a recognisance to the person complained of, and it is
directed to be done before the issuing or praying out
of the warrant. There was bail for prosecution taken
agreeably to this statute. The Justice was then *func-
tus officio.* He had exercised his judgment, and had
taken bail to his own acceptance. This bail was ex-
cepted to by the delinquents ; and then the magis-
trate, without law, proceeded to order and take the
*Vermont* Stat.
vol. 1. p. 176.
s. 20.
present recognisance. Even the new statute does
not provide for this case, that contemplating merely
a case where adjournment of the court of examina-
tion may be necessary, and providing only for the
taking recognisances of the parties or witnesses to
the treasurer of the town, county, or state, to which
a fine would be payable on conviction. At no time
did the power to take the recognisance in question
exist in a single magistrate. All the powers of the
Justices of Peace in this State relative to the taking
of bail, are given by statute. The Justices them-
selves are creatures of the statute law, and must be
controlled by it.

In support of the third exception, we shall read
*Viner's Abridgment,* vol. 2. p. 57. and a note upon the
second section. *A. B.* and *C.* take bond, broken as

to *A.* who brings suit, and in Exchequer judgment of Common Pleas reversed.

Mr. *Cook* here read several other cases from *Viner*, and the *note, section* 15. *which he insisted were in point,* and proceeded—

In the present case, they have not shewn what became of *Jacob Harrington,* the co-recognisee, or why he is not joined in the action. Did no action accrue to him, or has he forfeited his right? If so, let it be expressed. Is he deceased? where are his executors or administrators? Certainly, from the authorities read, *Miriam* is without remedy, unless *Harrington* is joined, or some sufficient reason shewn upon the record why he is not joined.

In *Viner's Abridgment,* vol. 14. p. 469, 470. title Joint and Several, we are taught, that when the words of the covenant are several, obligees may sever in the action. Here it is not stated in the declaration, that this recognisance was taken *severally* to the recognisees. We anticipate that the case of the *Four Fiddlers,* in the 2d vol. of *Viner's Abridgment,* may be attempted to be enforced as an authority against us. But we observe, that the decisions of the higher Courts upon solemn argument, are alone to be relied upon as settled cases, and not those of the inferior courts, which are merely acquiesced in.

In support of the fourth exception. It is manifest that the statute contemplates by the expression, " *prosecuting to effect,*" all that a person is bound by legal duty to do in such prosecution. Here a complaint was entered, and well supported and prosecuted to effect before the Justice who ordered the respondents to procure bail for their appearance before the

*Hazen et ux.*
*v.*
*Smith and Caswell.*

Supreme Court to answer to the charges exhibited in the complaint, and this was *all the duty required by law* of the complainant.   In the whole career of prosecution, from this to the conviction and punishment, there was nothing further for the complainant, of his own personal exertion, to do.   If the magistrate had omitted to return the recognisance for the appearance of the respondent at Court, it was not the duty of the complainant to call him to account for his neglect.   If the respondents or witnesses for the State failed to appear, the complainant could not take the forfeiture of their recognisances.   It appears there was an indictment found by the Grand Jury, exhibiting the same charges as in the complaint set forth. The complainant could not accelerate the trial, or enter a *nolle prosequi*.   The whole was in the hands of the State Attorney, who could control the prosecution in any stage.   When the complainant had prosecuted his complaint before the Justice, and had procured the respondents to be recognised to appear before the Supreme Court to answer to the charges exhibited by him in his complaint, he had *prosecuted to effect*.   If he had failed to effect this, he would have been liable, under the recognisance, to answer all such damages as had then arisen;   but having supported his complaint so far,  he had done all the duty required of him by the law, and had prosecuted to effect, according to the true intent and meaning of the condition of the recognisance.

*Daniel Chipman, e contra*.    As to the first exception, it is totally immaterial whether *Miriam* was sole or the wife of another at the time of taking the

recognisance. It was taken for her benefit, and enured to her as a personal right; and the only question is, is this action well planted, as brought in the names of the husband and wife? for they are set forth as such in the writ; a question which it would be a reflection upon the Court to agitate.

In reply to the second exception. To determine whether this recognisance was legally taken, we must advert to the powers of all Courts. It will be found, that when any Court is empowered by statute to do a particular act, there is a power incident to the Court to conduct the business with such practical variations in the mode as to carry the design of the statute completely into effect, that substantial justice may be done, and the rights of the citizen not sacrificed to mere form. Here the Justice of the Peace is authorised by the statute, before the issuing of the process, to take recognisance for costs and damages, to be paid to the respondent by complainant in case he should fail to support his complaint. Here the law stops. Question then arises, whether, the bail failing, the Court had power to order other or better bail. The only correct determination on the subject is, that all Courts have incident to them such power. The Justice, it is true, ought to have staid proceedings until the order for better bail was complied with. What would have been the consequence if complainant had refused to enter better bail, is now immaterial. Here the recognisors complied voluntarily, and the recognisance is binding.

We contend that the power to take recognisances of the nature of the one in question, is expressly given by the statute of 1797, alluded to by the gen-

*Hazen et ux.*
*v.*
*Smith and Caswell.*

15

Hazen et ux.
v.
Smith and Cas-
well.

tleman preceding me.  But if the Justices of the Peace have now such power given by this statute, *non constat* that the power did not exist in them before.  Statutes are frequently made in affirmance of the common law.  Justices of the Peace are ancient officers, and, as conservators of the peace, possess many common law prerogatives; and the power given to them by the new statute is without doubt but in affirmance of the same power originally possessed by them at common law.

Upon the third exception we remark, that the reason of the case will dictate, that when any person or persons are bound by specialty to two or more, and the things covenanted for may be *separately* injurious, the law must intend that a separate action may be brought by him who is separately injured, or the recognisance is defeated.

The case in *Viner's Abridgment*, first read, does not apply; that savouring of a real action on joint-tenancy.  The reason of the thing shewed that the obligees ought not to be separated.  It would increase suits.  The interest was joint.

In the case next cited, *A.* covenanted with *B.* and *C.* that he would not farm the excise of beer in *Cornwall.  B.* was injured, and brought separate action.  The Court held here was *no joint interest*, and each might have his separate remedy.

In the present case, to apply the principle, was there any joint interest?  An acquittal of one would not have discharged the other.  If one had discharged this recognisance, it would not have operated a discharge as to the other, because *Miriam* and *Harrington* had separate interests, and might be se-

parately damaged. The whole course of judicial proceedings shew, that these recognisances, with several recognisees, are common; and the principle stated and supported by the books, has ever governed actions brought upon them.

As to the fourth exception. The law has pointed out certain officers to make complaint in criminal matters, and it has also authorised individuals to make such complaints, but they are holden for costs and damages. If the course taken by the Justice was irregular, which is not admitted, the recognisance shall still hold for costs. This arises from the very nature of the transaction. The meaning of the words of the statute, " prosecuting to effect," is clear. This term is well understood in civil process. When a person recognises upon the issuing of a writ returnable to the County Court to *prosecute to effect*, here, if the recognisor fails at any time before the action is before the Supreme Court, he shall respond the costs in suit upon the recognisance. And so on an action for malicious prosecution, which prosecution was commenced by process for examination before a Justice of the Peace ; the injured party recognised to appear at the Supreme Court, and indictment there found, though the binding over is the act of the Justice, and the indictment the act of the Grand Jury, and the latter under the control of the prosecuting officer of government, yet upon acquittal the action will well lie ; and the complainant shall not screen himself by saying, the proceedings of the Justice, or even the indictment itself, have sanctioned my doings.

*Chauncey Langdon*, on the same side. I shall only notice the third exception. If the doctrine laid down by my brother *Chipman* be not true, great injury will ensue. If both persons to whom this recognisance was taken are compelled to join in the action, one may have been put to greater costs, and received greater damage than the other. How shall the damages be severed? The first judgment must be for the penalty. Shall there, in such case, be several motions to Chancery? Therefore it has been wisely determined, that where the injury may be several, the remedy may be so.

Mr. *Cook* has misunderstood the note in *Viner's Abridgment*. It is not the reverse of the case in the text. All the cases cited by him first in order, which go to shew that persons united in the same specialty must prosecute jointly, respect freehold property holden in joint-tenancy, in which the principal, interests, and every thing growing out of them, have ever been considered as inseparable. In 2 *Mod.* p. 82. the case in *Viner's Abridgment* respecting the farming the excise of beer, *Wilkinson* v. *Sir Richard Lloyd*, is more fully stated, and shews more fully that it is in point. Is there any thing in the present recognisance which shews it to be of the nature of a joint contract. Here complaint was entered against *two;* both recognised to appear at the Supreme Court; both indicted; one, to wit, *Miriam Hazen*, acquitted by the Jury. The other's bond was estreated. In every view of the subject, the rights of *Jacob Harrington* were never confounded with ours.

⸺ ⸺, for the demurrant. The authorities cited are before the Court. I shall submit the first and two last exceptions in demurrer to their consideration, with the *coercive* observations of my brother *Cook,* and shall detain the Court with a few observations upon the second exception. There is manifestly a distinction between recognisances taken by a Justice in criminal and civil suits, and between those of the former where the Justice has jurisdiction of the offence, so as to try the issue, and those where he holds merely a Court of Inquiry. If the Justice takes a recognisance, though not particularly provided by statute, but within the spirit of it, in a cause within his jurisdiction to try, such recognisance will, on the quashing of the complaint, compel the payment of costs. But when the Justice holds a Court of Inquiry, every such recognisance then taken must be within the letter of the statute. The magistrate may be considered to have a power to control with some latitude those things which pertain to the administration of justice in his own Court; and here he may construe, enlarge or restrict those statutes relative to trials in his own Court, giving to such statutes in the exercise of his judicial power, such construction as to his wisdom may seem meet. But the object of a Court of Inquiry is not to try. No issue is joined. The magistrate is merely to discharge or bind over the accused to a superior Court; and the bonds taken are to be sent by him to such Court, and become part, not of his records, but of those of the Court to which they are sent. The Justice, in this case, acts not judicially but ministerially. His duty, then, in all motions for recognisances in his Court

of Inquiry, is to look to the plain letter of the sta-
tute, and, if the bonds required are not noticed therein,
to consider that he has no power to take them. Sure-
ly the magistrate could find neither in the letter or
the spirit of the existing statute, a power to take the
present recognisance. But conceding that he had,
is the recognisance forfeited? Have we not prose-
cuted to effect? Does the law require of a man to do
what he cannot do legally? When we had exhibited
sufficient evidence before the Court of Inquiry to ob-
tain bonds for the appearance of the delinquents be-
fore the Supreme Court, what could we have done
more legally? Did the law require of us, that we
should conduct the witnesses for the prosecution to
the Court? This was not required, for the statute
had provided, that the witnesses should themselves
recognise, for their appearance. Were we to fee
counsel to aid in the prosecution? The law had pro-
vided an attorney for the State. Was it required that
we should control, enlighten, and indoctrinate the
public prosecutor. Might not the State Attorney, in
the form of the indictment laid before the Grand
Jury, have altered our charges in the complaint, so as
to have excluded some essential part of the evidence?
might not the indictment have been brought at com-
mon instead of on the statute law? Might not the
attorney, although I confess it is not presumable
when I consider the abilities of the gentleman who
then prosecuted for the government, might not he,
through the press of public functions, have drawn for
the first time a defective indictment, which might
have been quashed in arrest of judgment. Must my
client be responsible for any, or all these failures? If

they happened, could it be said they resulted from his *not prosecuting to effect?* How then can any act after the Justice had ordered the delinquents to be bound over, be considered as comprehended within the clause, or made part of the conditions of the recognisance?

But let us examine the intent of the conditions of the recognisance. It is said, that ignorance of the law excuseth no man; but still laws ought to be so worded and so construed as to meet the general understanding of the people. Common informers are considered as doing a beneficial service to the State. They are provided for by the common and statute law, and stimulated to activity by the latter. What duty would a common informer conceive to be enjoined upon him by this condition of the recognisance? Would he conclude, that in the laudable act of bringing offenders to justice, he was bound merely to support his complaint before the Court of Inquiry? or would he, *could* he imagine, that he was to render himself responsible for the acts of others over whom he had no control, and for those various laches, by which criminals elude justice? Would he consider that he was responsible merely for those trivial costs which might attend a Court of Inquiry in his neighbourhood, which might be commensurate with his purse, or those possible costs and damages which might result from the failure of conviction at a distant Court, which might absolutely ruin him?

To shew that the responsibility of the recognisors attached to the proceedings in the Supreme Court, some analogy is attempted to be shewn betwixt this case and that of an action brought for a malicious pro-

*Hazen et ux.*
*v.*
*Smith and Caswell.*

secution, stated to be commenced before a Court of Inquiry, with acquittal in the Supreme Court. To sustain such action, express malice must be shewn, or strongly implied in the malicious *prosecutors ;* for the action must be brought in the nature of a writ of conspiracy, and against more than one; and malice being proved in the commencement of the process before the Court of Inquiry, all subsequent proceedings in the course of prosecution in the Supreme Court are legally considered to have arisen from it, and fairly imputable to the primary agents. But can express malice be shewn, or malice even implied in an action of debt on recognisance? The Justice's authority to take this recognisance has been considered in the argument as one of those variations from the express letter of the statute, which he had an inherent power, by virtue of his office, to do, for the purpose of carrying the principal intent of the statute into effect. If it were conceded, that the magistrate possessed the power so to construe the statute as to effect that which he might imagine to be its intent, would it follow, that he would have power to add such clauses and provisions to the statute as he in the profundity of his legal science might imagine that the Legislature should have supplied.

The only recognisance for costs of prosecution which the magistrate issuing process upon complaint, is clearly designated by the statute. It shall be entered into at the time of the praying out the warrant, Whatsoever was done by the Justice afterwards, and with however honest intentions, relative to taking any after recognisance, was an officious intermeddling,

not warranted by the statute, and therefore nugatory and void.

Hazen et ux,
v.
Smith and Cas-
well.

### Opinion of the Court.

The Chief Judge delivered the opinion of the Court.

The Court consider, that the Justice of the Peace had no power, under the statute of 1787, on motion for new bail, to take the recognisance declared upon. The second exception in demurrer being well taken, in the united opinion of the Judges, and going to the cause of action, the Court waive any opinion upon the other points.

Let judgment be entered, that the plaintiffs' declaration is *insufficient*, and that defendants have their costs.*

*Daniel Chipman* and *Chauncey Langdon*, for plaintiffs.

—— —— and *John Cook*, for defendants.

---

* *Vide* further report of this cause on reserve—*Rutland County, July* adjourned term, A. D. 1802. *Vide* names of cases.